# IN RE: AMENDMENT TO THE MODEL RULES OF PROFESSIONAL CONDUCT

788 S.W.2d 462
Supreme Court of Arkansas
Delivered April 16, 1990

PER CURIAM. By a previous per curiam order we published proposed changes in the Model Rules of Professional Conduct as recommended by the Special Committee of the Arkansas Bar Association. The proposals had the approval of the Arkansas Bar Association and the House of Delegates of the American Bar Association. As is customary, we invited the bench and bar of Arkansas, as well as other interested parties, to offer comments. Having received no objections to the proposed changes, and finding them to have merit, they are hereby approved and adopted effective June 1, 1990. The changes are appended to this order.

It is so ordered.

## PROPOSED AMENDMENTS TO MODEL RULES

1. The first paragraph of the Comment to Rule 1.7, the same being the first paragraph under the heading entitled "Loyalty to a Client," is amended by adding language and dividing the paragraph into two paragraphs, to read as follows:

> Loyalty is an essential element in the lawyer's relationship to a client. An impermissible conflict of interest may exist before representation is undertaken, in which event the representation should be declined. The lawyer should adopt reasonable procedures, appropriate for the size and type of firm and practice, to determine in both litigation and nonlitigation matters the parties and issues involved and to determine whether there are actual or potential conflicts of interest.

> If such a conflict arises after representation has been undertaken, the lawyer should withdraw from the representation. See Rule 1.16. Where more than one client is involved and the lawyer withdraws because a conflict arises after representation, whether the lawyer may continue to represent any of the clients is determined by Rule 1.9. See also Rule 2.2(c). As to whether a client-lawyer relationship exists or, having once been established, is continuing, see Comment to Rule 1.3 and Scope.

2. Paragraph (b) of Rule 1.8 is amended by adding language, to read as follows:

> (b) A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation, except as permitted or required by Rule 1.6 or Rule 3.3.

3. Rule 1.9 is amended by adding a new paragraph (b) and other language, renumbering paragraphs and making corresponding changes to the Comment and Code Comparison, to read as follows:

Rule 1.9 Conflict of Interest: Former Client

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in

the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client.

(1) whose interests are materially adverse to that person; and

(2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter;

unless the former client consents after consultation.

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has become generally known; or

(2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

COMMENT:

After termination of a client-lawyer relationship, a lawyer may not represent another client except in conformity with this Rule. The principles in Rule 1.7 determine whether the interests of the present and former client are adverse. Thus, a lawyer could not properly seek to rescind on behalf of a new client a contract drafted on behalf of the former client. So also a lawyer who has prosecuted an accused person could not properly represent the accused in a subsequent civil action against the government concerning the same transaction.

The scope of a "matter" for purposes of this Rule may

depend on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interest clearly is prohibited. On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client. Similar considerations can apply to the reassignment of military lawyers between defense and prosecution functions within the same military jurisdiction. The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.

## Lawyers Moving Between Firms

When lawyers have been associated within a firm but then end their association, the question of whether a lawyer should undertake representation is more complicated. There are several competing considerations. First, the client previously represented by the former firm must be reasonably assured that the principle of loyalty to the client is not compromised. Second, the rule should not be so broadly cast as to preclude other persons from having reasonable choice of legal counsel. Third, the rule should not unreasonably hamper lawyers from forming new associations and taking on new clients after having left a previous association. In this connection, it should be recognized that today many lawyers practice in firms, that many lawyers to some degree limit their practice to one field or another, and that many move from one association to another several times in their careers. If the concept of imputation were applied with unqualified rigor, the result would be radical curtailment of the opportunity of lawyers to move from one practice setting to another and of the opportunity of clients to change counsel.

Reconciliation of these competing principles in the past has been attempted under two rubrics. One approach has been to seek per se rules of disqualification. For example, it has been held that a partner in a law firm is

conclusively presumed to have access to all confidences concerning all clients of the firm. Under this analysis, if a lawyer has been a partner in one law firm and then becomes a partner in another law firm, there may be a presumption that all confidences known by the partner in the first firm are known to all partners in the second firm. This presumption might properly be applied in some circumstances, especially where the client has been extensively represented, but may be unrealistic where the client was represented only for limited purposes. Furthermore, such a rigid rule exaggerates the difference between a partner and an associate in modern law firms.

The other rubric formerly used for dealing with disqualification is the appearance of impropriety proscribed in Canon 9 of the ABA Model Code of Professional Responsibility. This rubric has a two fold problem. First, the appearance of impropriety can be taken to include any new client-lawyer relationship that might make a former client feel anxious. If that meaning were adopted, disqualification would become little more than a question of subjective judgment by the former client. Second, since "impropriety" is undefined, the term "appearance of impropriety" is question-begging. It therefore has to be recognized that the problem of disqualification cannot be properly resolved either by simple analogy to a lawyer practicing alone or by the very general concept of appearance of impropriety.

*Confidentiality*

Preserving confidentiality is a question of access to information. Access to information, in turn, is essentially a question of fact in particular circumstances, aided by inferences, deductions or working presumptions that reasonably may be made about the way in which lawyers work together. A lawyer may have general access to files of all clients of a law firm and may regularly participate in discussions of their affairs; it should be inferred that such a lawyer in fact is privy to all information about all the firm's clients. In contrast, another lawyer may have access to the files of only a limited number of clients and participate in discussions of the affairs of no other clients; in the absence of information to the contrary, it should be inferred that

such a lawyer in fact is privy to information about the clients actually served but not those of other clients.

Application of paragraph (b) depends on a situation's particular facts. In such an inquiry, the burden of proof should rest upon the firm whose disqualification is sought.

Paragraph (b) operates to disqualify the lawyer only when the lawyer involved has actual knowledge of information protected by Rules 1.6 and 1.9(b). Thus, if a lawyer while with one firm acquired no knowledge or information relating to a particular client of the firm, and that lawyer later joined another firm, neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a related matter even though the interests of the two clients conflict. See Rule 1.10(b) for the restrictions on a firm once a lawyer has terminated association with the firm.

Independent of the question of disqualification of a firm, a lawyer changing professional association has a continuing duty to preserve confidentiality of information about a client formerly represented. See Rules 1.6 and 1.9.

## Adverse Positions

The second aspect of loyalty to a client is the lawyer's obligation to decline subsequent representations involving positions adverse to a former client arising in substantially related matters. This obligation requires abstention from adverse representation by the individual lawyer involved, but does not properly entail abstention of other lawyers through imputed disqualification. Hence, this aspect of the problem is governed by Rule 1.9(a). Thus, if a lawyer left one firm for another, the new affiliation would not preclude the firms involved from continuing to represent clients with adverse interests in the same or related matters, so long as the conditions of paragraphs (b) and (c) concerning confidentiality have been met.

Information acquired by the lawyer in the course of representing a client may not subsequently be used or revealed by the lawyer to the disadvantage of the client. However, the fact that a lawyer has once served a client does not preclude the lawyer from using generally known

information about that client when later representing another client.

Disqualification from subsequent representation is for the protection of former clients and can be waived by them. A waiver is effective only if there is disclosure of the circumstances, including the lawyer's intended role in behalf of the new client.

With regard to an opposing party's raising a question of conflict of interest, see Comment to Rule 1.7. With regard to disqualification of a firm with which a lawyer is or was formerly associated, see Rule 1.10.

CODE COMPARISON:

There was no counterpart to this Rule in the Disciplinary Rules of the Model Code. Representation adverse to a former client was sometimes dealt with under the rubric of Canon 9 of the Model Code, which provided: "A lawyer should avoid even the appearance of impropriety." Also applicable were EC 4-6 which stated that the "obligation of a lawyer to preserve the confidences and secrets of his client continues after the termination of his employment" and Canon 5 which stated that "[a] lawyer should exercise independent professional judgment on behalf of a client."

The provision for waiver by the former client in paragraphs (a) and (b) is similar to DR 5-105(C).

The exception in the last clause of paragraph (c)(1) permits a lawyer to use information relating to a former client that is in the "public domain," a use that was also not prohibited by the Model Code, which protected only "confidence and secrets." Since the scope of paragraphs (a) and (b) is much broader than "confidences and secrets," it is necessary to define when a lawyer may make use of information about a client after the client-lawyer relationship has terminated.

4. Rule 1.10 is amended by deleting former paragraph (b), adding language, renumbering paragraphs and making corresponding changes to the Comment and Code Comparison, to read as follows:

Rule 1.10 Imputed Disqualification: General Rule

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9, 2.2 or 3.7

(b) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, unless:

(1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and

(2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(c) that is material to the matter.

(c) A disqualification prescribed by this rule may be waived by the affected client under the conditions stated in Rule 1.7.

COMMENT:

*Definition of "Firm"*

For purposes of the Rules of Professional Conduct, the term "firm" includes lawyers in a private firm, and lawyers in the legal department of a corporation or other organization, or in a legal services organization. Whether two or more lawyers constitute a firm within this definition can depend on the specific facts. For example, two practitioners who share office space and occasionally consult or assist each other ordinarily would not be regarded as constituting a firm. However, if they present themselves to the public in a way suggesting that they are a firm or conduct themselves as a firm, they should be regarded as a firm for the purposes of the Rules. The terms of any formal agreement between associated lawyers are relevant in determining whether they are a firm, as is the fact that they have mutual access to information concerning the clients they serve. Furthermore, it is relevant in doubtful cases to consider the underlying purpose of the Rule that is involved. A group of lawyers could be regarded as a firm for purposes of the rule that the same lawyer should not

represent opposing parties in litigation, while it might not be so regarded for purposes of the rule that information acquired by one lawyer is attributed to the other.

With respect to the law department of an organization, there is ordinarily no question that the members of the department constitute a firm within the meaning of the Rules of Professional Conduct. However, there can be uncertainty as to the identity of the client. For example, it may not be clear whether the law department of a corporation represents a subsidiary or an affiliated corporation, as well as the corporation by which the members of the department are directly employed. A similar question can arise concerning an unincorporated association and its local affiliates.

Similar questions can also arise with respect to lawyers in legal aid. Lawyers employed in the same unit of a legal service organization constitute a firm, but not necessarily those employed in separate units. As in the case of independent practitioners, whether the lawyers should be treated as associated with each other can depend on the particular rule that is involved, and on the specific facts of the situation.

Where a lawyer has joined a private firm after having represented the government, the situation is governed by Rule 1.11 (a) and (b); where a lawyer represents the government after having served private clients, the situation is governed by Rule 1.11(c)(1). The individual lawyer involved is bound by the Rules generally, including Rules 1.6, 1.7 and 1.9.

Different provisions are thus made for movement of a lawyer between a private firm and the government. The government is entitled to protection of its client confidences and, therefore, to the protections provided in Rules 1.6, 1.9 and 1.11. However, if the more extensive disqualification in Rule 1.10 were applied to former government lawyers, the potential effect on the government would be unduly burdensome. The government deals with all private citizens and organizations and, thus, has a much wider circle of adverse legal interests than does any private law firm. In these circumstances, the government's recruit-

ment of lawyers would be seriously impaired if Rule 1.10 were applied to the government. On balance, therefore, the government is better served in the long run by the protections stated in Rule 1.11.

## Principles of Imputed Disqualification

The rule of imputed disqualification stated in paragraph (a) gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm. Such situations can be considered from the premise that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated. Paragraph (a) operates only among the lawyers currently associated in a firm. When a lawyer moves from one firm to another, the situation is governed by Rules 1.9(b) and 1.10(b).

Rule 1.10(b) operates to permit a law firm, under certain circumstances, to represent a person with interests directly adverse to those of a client represented by a lawyer who formerly was associated with the firm. The Rule applies regardless of when the formerly associated lawyer represented the client. However, the law firm may not represent a person with interests adverse to those of a present client of the firm, which would violate Rule 1.7. Moreover, the firm may not represent the person where the matter is the same or substantially related to that in which the formerly associated lawyer represented the client and any other lawyer currently in the firm has material information protected by Rules 1.6 and 1.9(c).

CODE COMPARISON:

DR 5-105(D) provided that "[i]f a lawyer is required to decline or to withdraw from employment under a Disciplinary Rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment."

5. Paragraph (c)(2) of Rule 1.11 is amended by adding language, to read as follows:

(c) Except as law may otherwise expressly permit, a lawyer serving as a public officer or employee shall not:

(2) negotiate for private employment with any person who is involved as a party or as attorney for a party in a matter in which the lawyer is participating personally and substantially, except that a lawyer serving as a law clerk to a judge, other adjudicative officer or arbitrator may negotiate for private employment as permitted by Rule 1.12(b) and subject to the conditions stated in Rule 1.12(b).

6. Paragraph (a) of Rule 1.12 is amended by changing one word, to read as follows:

(a) Except as stated in paragraph (d), a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, arbitrator or law clerk to such a person, unless all parties to the proceeding consent after consultation.

7. The fourth paragraph of the Comment to Rule 3.7, the same being the last paragraph of the Comment, is amended by deleting language and adding a new fifth and last paragraph, to read as follows:

Apart from these two exceptions, paragraph (3) recognizes that a balancing is required between the interests of the client and those of the opposing party. Whether the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified due regard must be given to the effect of disqualification on the lawyer's client. It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness.

This Rule is not intended to ordinarily prohibit a lawyer from being a witness when the lawyer is also the party of record. A lawyer may represent himself pro se, or

be represented by other lawyers in his firm, and in either event he should be permitted in that instance to appear as a witness.

8.   Paragraphs (a) and (b) of Rule 6.3 are amended by adding language, to read as follows:

Rule 6.3 Membership in Legal Services Organization

A lawyer may serve as a director, officer or member of a legal services organization, apart from the law firm in which the lawyer practices, notwithstanding that the organization serves persons having interest adverse to a client of the lawyer. The lawyer shall not knowingly participate in a decision or action of the organization:

(a) if participating in the decision or action would be incompatible with the lawyer's obligations to a client under Rule 1.7; or

(b) where the decision or action could have a material adverse effect on the representation of a client of the organization whose interests are adverse to a client of the lawyer.

9.   Paragraphs (a), (b) and (c) of Rule 7.2 and the Code Comparison to Rule 7.2 are amended by adding and deleting language, to read as follows:

Rule 7.2 Advertising

(a) Subject to the requirements of Rules 7.1 and 7.3, a lawyer may advertise services through public media, such as a telephone directory, legal directory, newspaper or other periodical, outdoor advertising, radio or television, or through written or recorded communication.

(b) A copy or recording of an advertisement or communication shall be kept for five years after its last dissemination along with a record of when and where it was used.

(c) A lawyer shall not give anything of value to a person for recommending the lawyer's services, except that a lawyer may pay the reasonable cost of advertisements or communications permitted by this rule and may pay the

usual charges of a not-for-profit lawyer referral service or other legal service organization.

. . .

CODE COMPARISON:

With regard to paragraph (a), DR 2-101(B) provided that a lawyer "may publish or broadcast, subject to DR 2-103, . . . in print media . . . or television or radio. . . ."

With regard to paragraph (b), DR 2-101(D) provided that if the advertisement is "communicated to the public over television or radio, . . . a recording of the actual transmission shall be retained by the lawyer."

With regard to paragraph (c), DR 2-103(B) provided that a lawyer "shall not compensate or give anything of value to a person or organization to recommend or secure his employment . . . except that he may pay the usual and reasonable fees or dues charged by any of the organizations listed in DR 2-103(D)." (DR 2-103(D) referred to legal aid and other legal services organizations.) DR 2-101(I) provided that a lawyer "shall not compensate or give anything of value to representatives of the press, radio, television, or other communication medium in anticipation of or in return for professional publicity in a news item."

There was no counterpart to paragraph (d) in the Model Code.

10. Rule 7.3 is amended by adding and deleting language and making corresponding changes to the Comment and Code Comparison, to read as follows:

Rule 7.3 Direct Contact with Prospective Clients

(a) A lawyer shall not by in-person or live telephone contact solicit professional employment from a prospective client with whom the lawyer has no family or prior professional relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain.

(b) A lawyer shall not solicit professional employment from a prospective client by written or recorded communication or by in-person or telephone contact even when not

otherwise prohibited by paragraph (a), if:

(1) the prospective client has made known to the lawyer a desire not to be solicited by the lawyer; or

(2) the solicitation involves coercion, duress or harassment.

(c) Every written or recorded communication from a lawyer soliciting professional employment from a prospective client known to be in need of legal services in a particular matter, and with whom the lawyer has no family or prior professional relationship, shall include the words "Advertising Material" on the outside envelope and at the beginning and ending of any recorded communication.

(d) Notwithstanding the prohibitions in paragraph (a), a lawyer may participate with a prepaid or group legal service plan operated by an organization not owned or directed by the lawyer which uses in-person or telephone contact to solicit memberships or subscriptions for the plan from persons who are not known to need legal services in a particular matter covered by the plan.

COMMENT:

There is a potential for abuse inherent in direct in-person or live telephone contact by a lawyer with a prospective client known to need legal services. These forms of contact between a lawyer and a prospective client subject the layperson to the private importuning of the trained advocate in a direct interpersonal encounter. The prospective client, who may already feel overwhelmed by the circumstances giving rise to the need for legal services, may find it difficult fully to evaluate all available alternatives with reasoned judgment and appropriate self-interest in the face of the lawyer's presence and insistence upon being retained immediately. The situation is fraught with the possibility of undue influence, intimidation, and overreaching.

This potential for abuse inherent in direct in-person or live telephone solicitation of prospective clients justifies its prohibition, particularly since lawyer advertising and written and recorded communication permitted under Rule 7.2 offer alternative means of conveying necessary

information to those who may be in need of legal services. Advertising and written and recorded communications which may be mailed or autodialed make it possible for a prospective client to be informed about the need for legal services, and about the qualifications of available lawyers and law firms, without subjecting the prospective client to direct in-person or telephone persuasion that may overwhelm the client's judgment.

The use of general advertising and written and recorded communications to transmit information from lawyer to prospective client, rather than direct in-person or live telephone contact, will help to assure that the information flows cleanly as well as freely. The contents of advertisements and communications permitted under Rule 7.2 are permanently recorded so that they cannot be disputed and may be shared with others who know the lawyer. This potential for informal review is itself likely to help guard against statements and claims that might constitute false and misleading communications, in violation of Rule 7.1. The contents of direct in-person or live telephone conversations between a lawyer to a prospective client can be disputed and are not subject to third-party scrutiny. Consequently, they are much more likely to approach (and occasionally cross) the dividing line between accurate representations and those that are false and misleading.

There is far less likelihood that a lawyer would engage in abusive practices against an individual with whom the lawyer has a prior personal or professional relationship or where the lawyer is motivated by considerations other than the lawyer's pecuniary gain. Consequently, the general prohibition in Rule 7.3(a) and the requirements of Rule 7.3(c) are not applicable in those situations.

But even permitted forms of solicitation can be abused. Thus, any solicitation which contains information which is false or misleading within the meaning of Rule 7.1, which involves coercion, duress or harassment within the meaning of Rule 7.3(b)(2), or which involves contact with a prospective client who has made known to the lawyer a desire not to be solicited by the lawyer within the meaning of Rule 7.3(b)(1) is prohibited. Moreover, if after

sending a letter or other communication to a client as permitted by Rule 7.2 the lawyer receives no response, any further effort to communicate with the prospective client may violate the provisions of Rule 7.3(b).

This Rule is not intended to prohibit a lawyer from contacting representatives of organizations or groups that may be interested in establishing a group or prepaid legal plan for their members, insureds, beneficiaries or other third parties for the purpose of informing such entities of the availability of and details concerning the plan or arrangement which the lawyer or lawyer's firm is willing to offer. This form of communication is not directed to a prospective client. Rather, it is usually addressed to an individual acting in a fiduciary capacity seeking a supplier of legal services for others who may, if they choose, become prospective clients of the lawyer. Under these circumstances, the activity which the lawyer undertakes in communicating with such representatives and the type of information transmitted to the individual are functionally similar to and serve the same purpose as advertising permitted under Rule 7.2.

The requirement in Rule 7.3(c) that certain communications be marked "Advertising Material" does not apply to communications sent in response to requests of potential clients or their spokespersons or sponsors. General announcements by lawyers, including changes in personnel or office location, do not constitute communications soliciting professional employment from a client known to be in need of legal services within the meaning of this Rule.

Paragraph (d) of this Rule would permit an attorney to participate with an organization which uses personal contact to solicit members for its group or prepaid legal service plan, provided that the personal contact is not undertaken by any lawyer who would be a provider of legal services through the plan. The organization referred to in paragraph (d) must not be owned by or directed (whether as manager or otherwise) by any lawyer or law firm that participates in the plan. For example, paragraph (d) would not permit a lawyer to create an organization controlled directly or indirectly by the lawyer and use the organiza-

tion for the in-person or telephone solicitation of legal employment of the lawyer through memberships in the plan or otherwise. The communication permitted by these organizations also must not be directed to a person known to need legal services in a particular matter, but is to be designed to inform potential plan members generally of another means of affordable legal services. Lawyers who participate in a legal service plan must reasonably assure that the plan sponsors are in compliance with Rules 7.1, 7.2 and 7.3(b). See 8.4(a).

CODE COMPARISON:

DR 2-104(A) provided with certain exceptions that "[a] lawyer who has given in-person unsolicited advice to a layperson that he should obtain counsel or take legal action shall not accept employment resulting from that advice. . . ." The exceptions include DR 2-104(A)(1), which provided that a lawyer "may accept employment by a close friend, relative, former client (if the advice is germane to the former employment), or one whom the lawyer reasonably believes to be a client." DR 2-104(A)(2) through DR 2-104(A)(5) provided other exceptions relating, respectively, to employment resulting from public educational programs, recommendation by a legal assistance organization, public speaking or writing and representing members of a class in class action litigation.

11. The first paragraph of the Comment to Rule 7.4 is amended by adding and deleting language, to read as follows:

COMMENT:

This Rule permits a lawyer to indicate areas of practice in communications about the lawyer's services, for example, in a telephone directory or other advertising. If a lawyer practices only in certain fields, or will not accept matters except in such fields, the lawyer is permitted so to indicate. However, a lawyer is not permitted to state that the lawyer is a "specialist," practices a "specialty," or "specializes in" particular fields, except as permitted by paragraph (c) of this Rule. These terms have acquired a secondary meaning implying formal recognition as a

specialist and therefore, use of these terms is misleading.